UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X

MICHAEL JOHNSON,                                          )              **ECF CASE**
                                                         )
                                        Plaintiff,       ) **2004 Civ. 06858 (DAB)**
                   -against-                              )
                                                         ) **COMPLAINT**
CITY OF NEW YORK; PO JOSE FRIAS, individually and )
in his official capacity as a New York City Police Officer; ) **JURY TRIAL IS DEMANDED**
PO RODRIGUEZ, individually and in his official capacity )
as a New York City Police Officer; SERGEANT JOHN )
DOE, individually and in his official capacity as a New )
York City Police Officer,                                )
                                                         )
                                        Defendants.       )
                                                         )
                                                         )
----------------------------------------------------------------------- X

## PRELIMINARY STATEMENT

1.      This case arises from the unlawful assault, detention, arrest, prosecution, and strip search of an innocent man.  At 10:15 am on May 27, 2003 MICHAEL JOHNSON had entered in the lobby of 2427 Webster Avenue, Bronx NY to visit his brother's girlfriend, a tenant there, when defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, all in plain clothes, approached him.  Without provocation or cause, defendants stopped Mr. JOHNSON, and, without identifying themselves as police officers, handcuffed him and dragged him out of the building to their unmarked vehicle.  At no time did defendants ever attempt to verify whether or not Mr. JOHNSON knew anyone in the building or was visiting anyone in the building.

2.      The defendants transported Mr. JOHNSON to the 46th Precinct, took him to a bathroom, and without provocation or cause, subjected him to a humiliating strip-search, and then placed him in a cell.

3.      Desperate to cover up their illegal actions, defendants then conspired to and did fabricate criminal charges of Criminal Trespass, P.L. 140.15, to make their actions appear justified.  The District Attorney's office, Bronx County, refused to bring charges and ordered Mr. JOHNSON released.

4.      In this civil rights action, the plaintiff, MICHAEL JOHNSON, seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, and of rights secured under the common law and the Constitution of the State of New York.

5.      The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

6.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.  Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3) and (4), this being an action seeking redress for the violation of plaintiff's constitutional and civil rights.

7.      Plaintiff's claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8.      Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

9.     Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

10.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## NOTICES OF CLAIM

11.     Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on August 19, 2003, within ninety (90) days of the events complained of herein.

12.     More than thirty (30) days have elapsed since the filing of such notices, and adjustment or payment thereof has been neglected or refused.

13.     A 50-H hearing was held on May 26, 2004 at 3:00 pm at Jeffrey Samel & Partners, Esqs., 150 Broadway – 20th Floor, New York, NY 10038, before a Notary Public of the State of New York.

14.     This action has been commenced within one year and ninety days after the occurrence of the events upon which these claims arise.

## PARTIES

15.     Plaintiff MICHAEL JOHNSON was thirty-seven (37) years old at the time of the incident.  He is a citizen and resident of the United States, and was at all times relevant herein a resident of the County of the Bronx, State of New York, and of full age.

16.     Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department that acts as its agent in the area of law enforcement and

for which it is ultimately responsible.  Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by members of the New York City Police Department.  Defendant CITY OF NEW YORK was at all times relevant herein the public employer of defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE.

17.     Defendant PO JOSE FRIAS, Shield No. 25388, was at all relevant times duly appointed and acting officer, servant, employee and agent of the New York City Police Department (NYPD), a municipal agency of defendant CITY OF NEW YORK.  Defendant PO FRIAS was at all relevant times acting under the direction and control of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK, and was acting pursuant to eithis official policy, or the custom, practice and usage of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK.  Defendant PO FRIAS is sued individually and in his official capacity.

18.     Defendant PO RODRIGUEZ, was at all relevant times duly appointed and acting officer, servant, employee and agent of the New York City Police Department (NYPD), a municipal agency of defendant CITY OF NEW YORK.  Defendant PO RODRIGUEZ was at all relevant times acting under the direction and control of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK, and was acting pursuant to either official policy, or the custom, practice and usage of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK.  Defendant PO RODRIGUEZ is sued individually and in his official capacity.

19.     Defendant SERGEANT JOHN DOE was at all relevant times duly appointed and acting officer, servant, employee and agent of the New York City Police Department (NYPD), a

municipal agency of defendant CITY OF NEW YORK.  Defendant SERGEANT JOHN DOE was at all relevant times acting under the direction and control of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK, and was acting pursuant to eithis official policy, or the custom, practice and usage of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK.  Defendant SERGEANT JOHN DOE is sued individually and in his official capacity.

20.     At all relevant times, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE were acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York, and the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK, and were acting in the course and scope of their duties and functions as officers, agents, servants, and employees of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.  At all relevant times, they were acting for and on behalf of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK, with the power and authority vested in them as officers, agents, servants and employees of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK.

## FACTUAL AND GENERAL ALLEGATIONS

21.     On the morning of May 27, 2003, just after 10:00 a.m. plaintiff MICHAEL JOHNSON entered 2427 Webster Avenue to visit his friend who lives in Apt. F11.

22.     Mr. JOHNSON was standing in the lobby when defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, dressed in plain-clothes, approached him and asked him what he was doing in the building.

23.     Mr. JOHNSON informed the three defendants that he was present to visit his friend, and proceeded to give them her name and apartment number.

24.     The three defendants made no effort or attempt to verify this information; instead, the three defendants immediately handcuffed Mr. JOHNSON, took him out of the building, and put him in the back seat an unmarked vehicle.

25.     Mr. JOHNSON made no effort to resist the arrest or to resist his handcuffing.

26.     The handcuffs were placed too tightly on Mr. JOHNSON and injured his wrists.

27.     Mr. JOHNSON was not informed he was being arrested nor was he read his rights.

28.     Once in the vehicle, Mr. JOHNSON asked the defendants why they had not verified that he was visiting someone.  The defendants informed Mr. JOHNSON that they did not want to.

29.     Mr. JOHNSON then asked what he was being arrested for.  He was informed that it was for criminal trespass and that they were taking him to the precinct.

30.     Upon arriving at the 46th Precinct, PO FRIAS or PO RODRIGUEZ took Mr. JOHNSON into a small bathroom and told him to remove all of his clothes.

31.     Mr. JOHNSON asked why he was being strip-searched, and was informed by one of the defendants that defendant SERGEANT JOHN DOE had told them to do so.

32.     Mr. JOHNSON removed his clothing.  PO FRIAS or PO RODRIGUEZ ordered him to stoop down and cough while naked.  He complied.

33.     PO FRIAS or PO RODRIGUEZ proceeded to search all of Mr. JOHNSON'S possessions and then told him to put his clothes back on.

34.     Mr. JOHNSON was photographed, fingerprinted, and placed in a cell with other individuals for approximately four hours.

35.     Mr. JOHNSON was then taken to Bronx County Criminal Court where he stayed for approximately five hours.

36.     The individual police officer defendants were all present at the time that these events were occurring, and observed and/or heard portions of what had happened but failed to intercede and/or report it to supervisory personnel, and failed to protect Mr. JOHNSON while in custody.

37.     Under the oath of office and the written rules and regulations promulgated by the NYPD, line officers and command personnel have an affirmative duty to intercede and prevent crimes and other misconduct committed by officers and to report such conduct whenever they become aware of it.

38.     The individual police officer defendants failed to intercede on behalf of Mr. JOHNSON, and failed to report the misconduct detailed above and below.

39.     Upon information and belief, subsequent to the false arrest of Mr. JOHNSON on May 27, 2003, the defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE conspired to and did fabricate a false account of the events surrounding Mr. JOHNSON' arrest.  As a result of this conspiracy to fabricate a false account of the events surrounding his arrest, Mr. JOHNSON was wrongfully incarcerated, illegally searched, and falsely charged with the crime of criminal trespass.

40.     Upon information and belief, the individual police officer defendants entered into the conspiracy hereinabove described for the purpose of depriving Mr. JOHNSON of his constitutional rights, by allowing him to be unreasonably and unjustifiably assaulted, arrested, and imprisoned by fellow officers, and also for the purpose of covering up the unlawful and unconstitutional actions of PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, and for the unlawful and unconstitutional actions of each other.

41.     At no time during the events described above did the defendant officers have probable cause for the arrest of Mr. JOHNSON, and there was no legal cause or excuse for his seizure.  At no time did Mr. JOHNSON assault or harass any police officer or resist arrest.

42.     On May 27, 2003, PO JOSE FRIAS swore to a false and fabricated account of the events surrounding plaintiff's arrest in a supporting deposition.

43.     The Bronx County District Attorney's office declined to prosecute Mr. JOHNSON, Mr. JOHNSON was released from Bronx County Criminal Court, and Mr. JOHNSON'S case was dismissed and sealed.

44.     The conduct of defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE in assaulting, restraining, falsely arresting, falsely imprisoning, illegally searching, and maliciously prosecuting Mr. JOHNSON directly and proximately caused plaintiff serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

45.     The assault on Mr. JOHNSON, as described above, by defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE was far in excess of their rightful authority as New York City Police Officers.  This assault on plaintiff was made without proper cause.

46.     The arrest, detention, and prosecution of Mr. JOHNSON were totally without probable cause, and were done maliciously, falsely and in bad faith.  Defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE acted with reckless and wanton disregard for the rights of the plaintiff.

47.     As a result of all of the acts alleged herein, Mr. JOHNSON has suffered and continues to suffer physical and emotional injury and pain, mental pain and anguish, and emotional distress.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

48.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

49.     The conduct and actions of defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, acting under color of law, in arresting and imprisoning Mr. JOHNSON absent probable cause, were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification or reason, and were designed to and did cause specific and serious harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

50.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

51.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

52.     The conduct and actions of defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, acting under color of law, in falsifying and fabricating, and conspiring to falsify and fabricate, an account of the events surrounding the arrest and assault on Mr. JOHNSON, upon which a police complaint and police information against plaintiff was based, were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification or reason, and were designed to and did cause specific and serious harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

53.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## THIRD CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

54.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

55.     The conduct and actions of defendant PO JOSE FRIAS, acting under color of law, in making false statements under oath in the supporting deposition against Mr. JOHNSON, were

done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, were done without lawful justification or reason, and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

56.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## FOURTH CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

57.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

58.     The conduct and actions of defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, acting under color of law, in failing to intercede or take any steps to protect Mr. JOHNSON from the unjustified and unconstitutional treatment he was receiving at the hands of the police officer defendants, were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification or reason, and were designed to and did cause specific and serious pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

59.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## FIFTH CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

60.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

61.     The conduct and actions of the defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, acting under color of law, in maliciously prosecuting Mr. JOHNSON, were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification or reason, and were designed to and did cause specific and serious pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

62.     As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.

## SIXTH CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

63.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

64.     The conduct and actions of the defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, acting under color of law, in strip searching Mr. JOHNSON, was

an objectively unreasonable search and seizure of plaintiff and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

65.     As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great humiliation, and was otherwise damaged and injured.

## SEVENTH CLAIM

**UNLAWFUL RETALIATION FOR FIRST AMENDMENT CONDUCT COGNIZABLE UNDER 42 U.S.C. § 1983**

66.     Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

67.     The conduct and actions of defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE in arresting, imprisoning, conspiring against, making false statements under oath about, maliciously prosecuting, and intentionally inflicting emotional distress upon Mr. JOHNSON, were a direct result of defendants' animus toward plaintiff and/or as a direct result of plaintiff's having exercised his First Amendment rights to free speech and assembly. The defendants' conduct was therefore an unlawful, oppressive and malicious attempt to harass, intimidate, and punish plaintiff for exercising his constitutional rights, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

68.     As a result of the foregoing, plaintiff was deprived of his constitutional rights and his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

### EIGHTH CLAIM

**LIABILITY OF DEFENDANT CITY OF NEW YORK
FOR CONSTITUTIONAL VIOLATIONS**

69.     Plaintiff incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

70.     At all times material to this complaint, defendant CITY OF NEW YORK, acting through the NYPD, had in effect de facto policies, practices, customs and usages that condoned and fostered the unconstitutional conduct of the defendant police officers, and were a direct and proximate cause of the damages and injuries complained of herein.

71.     These policies, practices, customs and usages include, inter alia: (a) the failure to properly screen, train, supervise, discipline, transfer, counsel and/or otherwise control police officers engaged in the excessive, unjustified and routine use of strip searches of persons arrested for misdemeanors or violations without any particularized reasonable suspicion of the possession of weapons or contraband; (b) the failure to properly screen, train, supervise, discipline, transfer, counsel and/or otherwise control police officers engaged in the unlawful use of trespass "sweeps" involving indiscriminate arrests of persons in the area of the sweep without probable cause; and (c) the police code of silence wherein police officers regularly cover-up police misconduct by telling false and incomplete stories, inter alia, in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau, and in public statements.

72.     The policy, practice, and custom of routine strip searches of misdemeanor and violation arrestees without sufficient cause is widespread, as evidenced by, inter alia,

a.      Approximately 62,000 arrestees were strip searched in Queens and Manhattan and were certified as a class in the Tyson case.  The CITY admitted that it had a policy of blanket strip searches and settled the case for a record $50 million.

b.      The Police Department maintains a de facto blanket policy of strip searching, at the precinct, persons arrested for, inter alia, charges related to the quality-of-life offensive.

c.      According to CCRB reports, the frequency of inappropriate strip searches is widespread, particularly among narcotics officers.

d.      Upon information and belief, in almost all cases inappropriate strip searches occur after arrests for "petty crimes" such as excessive noise, disorderly conduct, or minor drug offenses.

e.      The CCRB found that in all of the substantiated complaints involving strip-searches the officers or supervisors told investigators they believed "the searches had been appropriate, and in most cases routine."

f.      Additionally, officers and supervisors informed the CCRB that their commands "routinely conducted the kind of searches that the board found violate procedures."

73.     The policy, practice, and custom of trespass "sweeps" consisting of arrests without probable cause for criminal trespass is widespread, as evidenced by, inter alia:

a.      A central tool of the City's overzealous offensive against "quality-of-life" crimes, is these sweeps in the vicinity of public housing and buildings for which a "Clean Halls" affidavit has been filed.  Although the police ostensibly target only persons who allegedly

trespass inside these buildings, in practice the police indiscriminately arrest persons merely in proximity to the building.

        b.     As found in reports by the New York State Office of the Attorney General and the United States Civil Rights Commission, the aggressive stop-and-frisk policies that are part of the quality-of-life offensive, as evidenced by an analysis of UF-250 reports, result in an entrenched pattern of racially disparate stops that cannot be explained by crime rates, population demographics, or victim descriptions.  The stops and arrests resulting from the "sweeps" represent a significant portion of the total stops.

        c.     Every day and every night, New York City arraignment courts are inundated with primarily African-American and Latino people charged with being at certain addresses targeted by the Police Department.  From September 1997 to mid-December 2000, The Bronx Defenders, which staffs approximately 20% of arraignments Bronx County, represented 3,765 individuals charged with criminal trespass.  This number represents fully 9% of all cases handled by The Bronx Defenders in this period.  By extrapolation, the other defenders of indigent defendants in the Bronx have represented another 15,060 indigent defendants charged primarily with simple trespass.  Virtually all of the boilerplate complaints are identical to the allegations that were made against the current Plaintiff.

        d.     A common method of performing these sweeps involves the use of an observation post outside of the building in question.  These investigations usually occur from the roof of nearby buildings in the dark.  Because the officer monitoring passers-by is not inside the building, she necessarily must target a person as a suspect and a likely trespasser *before* he even enters the building, and without any particularized showing of suspicion.  Moreover, the officer's placement outside of the building ensures that she cannot witness any of the necessary elements

of a criminal trespass, which occur inside a building.  Instead, the use of these observation posts results in the wholesale detention and arrest of anyone in the vicinity of the building, without probable cause.

         e.     This practice of sweeping arrests without probable cause is condoned and accepted by the NYPD and the CITY.

         f.     An experienced criminal court arraignment judge who has evaluated hundreds of trespass cases resulting from these sweeps has been quoted as saying that "God help somebody if they are visiting a grandmother or somebody and she is not home … you spend 24 hours in jail."

74.     The CCRB (constituted as a civilian, rather than police, agency in July 1993) is Defendant NEW YORK CITY's primary agency dealing with allegations of police misconduct. Complaints may be made to the NYPD or directly to the CCRB.

75.     The public made a total of 11,991 allegations of officer misconduct in 1999 in 4,810 complaints.  Of these, 2,430 complaints were made to the CCRB and 2,368 to the NYPD. In 2000, the public made a total of 9,833 allegations of officer misconduct in 4,121 complaints. Of these, 1,741 complaints were made to the CCRB and 2,359 to the NYPD.

76.     Of the 9,833 allegations of misconduct received in 2000, the CCRB substantiated as meritorious and referred to the NYPD for discipline a total of 372 allegations, or 3.78% -- a rate well below that of other major cities.  These 372 substantiated allegations were contained in 189 cases.  As of December 2000, 127 of these cases were still pending at the NYPD (as well as over a quarter of the cases referred for discipline during 1999).

77.     In the year 2000, when presumably a substantial number of the 1999 allegations, along with allegations from prior years, would have come up for review and action, the NYPD

conducted the following disciplinary activity:

Termination, 3 officers;
20 to 30-day suspension with 1-year probation, 3 officers;
20 to 30-day loss of vacation pay and 1-year probation, 4 officers;
2 to 20-day suspension, 28 officers;
11 to 30-day loss of vacation pay, 24 officers;
2 to 10-day loss of vacation pay, 40 officers;
Instructions (lecture or training), 72 officers.

78.    Moreover, the CCRB does not adequately review complaints.  From 1996 to 2000, only 46.6% of the complaints received what the CCRB characterizes as a "full investigation."  Notably, the percentage of fully investigated cases was 33.1% in 1996, rose to 56.3% in 1997, but dropped to 48.6% in 1998, where it has basically remained through 2000.

79.    These minuscule rates of accountability at CCRB and NYPD levels communicate unmistakably to every police officer on the force that NEW YORK CITY and its officials will by policy tolerate if not encourage all but the most egregious misconduct.  They are a license to harm.

80.    Since at least 1984 the defendant CITY OF NEW YORK and the New York City Police Department have been on notice that their training of police officers has been inadequate and that police officers joining the force, including, on information and belief, the individual defendant police officers herein, were disproportionately involved in misconduct and abuse.

81.    In 1990, the Office of Special Prosecutor, which investigated charges of police corruption, was abolished.

82.    Upon information and belief, in the vast majority of police abuse cases that result in verdicts or substantial settlements for the victims, the New York City Police Department imposes no discipline, either before or after the court resolution, almost never reopens an

investigation previously conducted after such a resolution, and sometimes promotes the abusive officer to a position of greater authority despite the resolution.

83.     The policy, practice, and custom of a code of silence is widespread, as evidenced by, inter alia:

a.     New York County District Attorney Robert Morgenthau has been quoted as acknowledging that in the New York City Police Department there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully.

b.     In 1985 former Police Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the police department.

c.     Anthony Bouza, former Bronx Borough Commander for the New York City Police Department, acknowledged the existence of a "code of silence" in the police department and described it as "unbelievably powerful."  In fact, Bouza has stated that "[i]n New York the police code of silence is stronger than the mafia's code of omerta."

d.     Former New York City Deputy Police Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

84.     Acting under color of law, by and through the policy-makers of the CITY OF NEW YORK and pursuant to official policy or custom and practice, the CITY OF NEW YORK intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the CITY OF NEW YORK failed to effectively screen, hire, train, instruct, supervise, control and discipline, on a continuing basis, their police officers, including the defendant police officer(s) herein, for illegally strip searching detainees, for conducting trespass

"sweeps," for racial bias, for lack of truthfulness, for fabricating criminal charges and falsely swearing to criminal complaints against citizens for the purpose of shielding themselves against criminal and/or civil liability for violating those citizens' civil rights, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the individual defendant police officers herein to be in a position to assault and/or unreasonably and unjustifiably restrain and search the plaintiff, to otherwise cause him injury and violate his federal and state constitutional rights, and/or to permit these actions to take place without his knowledge or consent.

85.     On information and belief, the defendant police officers herein have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to, the defendant CITY OF NEW YORK and the New York City Police Department that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.  The CITY OF NEW YORK had knowledge of or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed.  Defendant CITY OF NEW YORK had the power, authority and duty to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, recklessly or with deliberate indifference to the rights of the inhabitants of the CITY OF NEW YORK failed to do so.

86.     On information and belief, defendant CITY OF NEW YORK and the New York City Police Department maintained an inadequate structure for risk containment and stress management relative to its police officers, and failed to create proper means of containing such

risk and managing such stress.  Inter alia, the structure was deficient, at the time of selection of police officers and thereafter during their employment, in its ability to evaluate and exchange information within the command structure about the performance of individual police officers; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer; and in its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The effect of this was to permit police officers of the New York City Police Department to function at levels of significant and substantial risk to the public in general.

87.     As a result of the foregoing conscious policies, practices, customs and/or usages, defendant CITY OF NEW YORK and the New York City Police Department have permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent or racially motivated behavior.  Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiff herein.

88.     As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, the plaintiff has suffered permanent mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### NINTH CLAIM

### ASSAULT AND BATTERY

89.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

90.     By the actions described above, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE did inflict assault and battery upon the plaintiff herein.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. JOHNSON and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

91.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## **TENTH CLAIM**

## **FALSE ARREST**

92.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

93.     By the actions described above, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE falsely arrested Mr. JOHNSON without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

94.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## ELEVENTH CLAIM

### FALSE IMPRISONMENT

95.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

96.     By the actions described above, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE falsely imprisoned and detained Mr. JOHNSON without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

97.     As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subjected to great humiliation, and was otherwise damaged and injured.

## TWELFTH CLAIM

### MALICIOUS PROSECUTION

98.     The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

99.     By the actions described above, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE maliciously prosecuted Mr. JOHNSON herein, subjecting him to great indignity and humiliation, pain and distress of mind and body, preventing him from attending to his usual business, and injuring his good name and reputation.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and

violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

100.    As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101.    The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

102.    By the actions described above, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally caused severe emotional distress to Mr. JOHNSON.   The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

103.    As a result of the foregoing, plaintiff was made ill, was subjected to great humiliation, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

### CONSPIRACY

104.    The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

105.    By the actions described above, defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE jointly and severally, acting in their individual capacities and

under color of law, conspired together and maliciously and willfully entered into a scheme to deprive Mr. JOHNSON of his rights, liberty, well-being and to commit the above-alleged unlawful acts.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his rights as guaranteed him by the Fourth and Fourteenth Amendments to the Constitution of the United States, and protected by 42 U.S.C. § 1983, and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

106.   As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to great humiliation and emotional distress, was deprived of liberty and detained, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

### NEGLIGENCE

107.   The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

108.   Defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE, jointly and severally, failed to exercise due care and negligently caused physical injuries and caused extreme emotional distress to Mr. JOHNSON.  The acts and conduct of defendants P PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE alleged herein were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

109.   As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to great humiliation and emotional distress, was deprived of liberty and detained, and was otherwise damaged and injured.

## SIXTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

110.    The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

111.    The defendant CITY OF NEW YORK negligently hired, screened, retained, supervised and trained the individual defendant police officers.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. JOHNSON and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

112.    As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to great humiliation and emotional distress, was deprived of liberty and detained, and was otherwise damaged and injured.

## SEVENTEENTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

113.    The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

114.    The conduct of the defendants PO JOSE FRIAS, PO RODRIGUEZ, and SERGEANT JOHN DOE alleged herein occurred while they were on duty and in uniform, and in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents, officers, servants and employees of the defendant CITY OF NEW YORK, and as a result the defendant CITY OF NEW YORK is liable to Mr. JOHNSON pursuant to the state common law doctrine of *respondeat superior*.

115.    As a result of the foregoing, plaintiff was deprived of his liberty, sustained painful injuries to his body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    The convening and empanelling of a jury to consider the merits of the claims herein;

    d.    Costs and interest and attorney's fees;

    e.    Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated:    Bronx, New York
            August 24, 2004

/s/_____
J. McGREGOR SMYTH, JR., Esq.  [JS-9995]
The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York  10451
(718) 838-7878

Attorneys for Plaintiff
MICHAEL JOHNSON