UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
MICHAEL JOHNSON,                                    )          **ECF CASE**
                                                    )
                            Plaintiff,              )  **2004 Civ. 06858 (DAB)**
                -against-                           )
                                                    )
CITY OF NEW YORK; PO JOSE FRIAS; PO                 )  **AMENDED COMPLAINT AND**
RODRIGUEZ; and LT VALENTINO AVALLONE,               )  **DEMAND FOR JURY TRIAL**
individually and in their official capacities as New York )
City Police Officers,                               )
                                                    )
                            Defendants.             )
                                                    )
------------------------------------------------------------------------ X

Plaintiff MICHAEL JOHNSON, by and through his attorneys, The Bronx Defenders, for his Complaint alleges as follows:

### **INTRODUCTION**

1. This case arises from the unlawful assault, detention, arrest, prosecution, and strip search of an innocent man. At 10:15 am on May 27, 2003 Michael Johnson had entered the lobby of 2427 Webster Avenue, Bronx NY to visit his brother's girlfriend, a tenant there, when defendants PO Jose Frias, PO Rodriguez, and Lt. Valentino Avallone, all in plain clothes, approached him. Without provocation or cause, defendants stopped Mr. Johnson, and, without identifying themselves as police officers, handcuffed him and dragged him out of the building to their unmarked vehicle. At no time did defendants ever attempt to verify whether or not Mr. Johnson knew anyone in the building or was visiting anyone in the building.

2. The defendants transported Mr. Johnson to the 46th Precinct, took him to a bathroom, and without provocation or cause, subjected him to a humiliating strip-search, and then placed him in a cell.

3.       In an effort to cover up their illegal actions, defendants then fabricated criminal charges against Mr. Johnson, launching a criminal case against him to make their actions appear justified.  The District Attorney's office, Bronx County, refused to bring any charges and ordered Mr. Johnson released.

4.       Mr. Johnson suffered significant physical and emotional damages as a result of this shameful assault, and he is entitled to compensation.  In this civil rights action, the plaintiff, Michael Johnson, seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and of rights secured by the Constitution of the United States, and of rights secured under the common law and the Constitution of the State of New York.

## JURISDICTION AND VENUE

5.       This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, Article I, § 12 of the New York Constitution, and New York state common law.

6.       The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

7.       The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY TRIAL DEMANDED

8.       Plaintiff demands a trial by jury in this action.

## NOTICES OF CLAIM

9.       Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on August 19, 2003, within ninety (90) days of the events complained of herein.

2

10. More than thirty (30) days have elapsed since the filing of such notices, and adjustment or payment thereof has been neglected or refused.

11. A 50-H hearing was held on May 26, 2004 at 3:00 pm at Jeffrey Samel & Partners, Esqs., 150 Broadway – 20th Floor, New York, NY 10038, before a Notary Public of the State of New York.

12. This action has been commenced within one year and ninety days after the occurrence of the events upon which these claims arise.

## PARTIES

13. Plaintiff Michael Johnson was thirty-seven (37) years old at the time of the incident. He is a citizen and resident of the United States, and was at all times relevant herein a resident of the County of the Bronx, State of New York, and of full age.

14. Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York. Defendant City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by members of the New York City Police Department.

15. At all times relevant hereto, defendant Police Officer Jose Frias, shield number 25388, was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such.

16. At all times relevant hereto, defendant Police Officer Rodriguez was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such.

17. At all times relevant hereto, defendant Lieutenant Valentino Avallone was a police sergeant and/or lieutenant of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such.

18. At all relevant times, defendants P.O. Frias, P.O. Rodriguez, and Lt. Avallone (collectively, the "Officer Defendants") were acting under color of state law. The Officer Defendants are sued individually and in their official capacities.

## FACTUAL AND GENERAL ALLEGATIONS

19. On the morning of May 27, 2003, just after 10:00 a.m. plaintiff Michael Johnson entered 2427 Webster Avenue to visit his friend who lives in Apt. F11.

20. Mr. Johnson was standing in the lobby when defendants PO Jose Frias, PO Rodriguez, and Lt. Valentino Avallone (then a Sergeant), dressed in plain-clothes, approached him and asked him what he was doing in the building.

21. Mr. Johnson informed the Officer Defendants that he was present to visit his friend, and proceeded to give them her name and apartment number.

22. The Officer Defendants made no effort or attempt to verify this information; instead, the three defendants immediately handcuffed Mr. Johnson, took him out of the building, and put him in the back seat of an unmarked vehicle.

23. Mr. Johnson made no effort to resist the arrest or to resist his handcuffing.

24. The handcuffs were placed too tightly on Mr. Johnson and injured his wrists.

4

25. Mr. Johnson was not informed he was being arrested nor was he informed of his rights.

26. Once in the vehicle, Mr. Johnson asked the Officer Defendants why they had not verified that he was visiting someone. The Officer Defendants informed Mr. Johnson that they simply did not want to.

27. Mr. Johnson then asked what he was being arrested for. He was informed that it was for criminal trespass and that they were taking him to the precinct.

28. Upon arriving at the 46th Precinct, PO Frias or PO Rodriguez took Mr. Johnson into a small bathroom and told him to remove all of his clothes.

29. Mr. Johnson asked why he was being strip-searched, and was informed by one of the defendants that defendant Lt. Avallone had told them to do so.

30. Mr. Johnson removed his clothing. PO Frias or PO Rodriguez ordered him to stoop down and cough while naked. He complied.

31. PO Frias or PO Rodriguez proceeded to search all of Mr. Johnson's possessions and then told him to put his clothes back on.

32. Mr. Johnson was photographed, fingerprinted, and placed in a cell with other individuals for approximately four hours.

33. Mr. Johnson was then taken to Bronx County Criminal Court where he stayed for approximately five hours.

34. The Officer Defendants were all present at the time that these events were occurring, and observed and/or heard portions of what had happened but failed to intercede and/or report it to supervisory personnel, and failed to protect Mr. Johnson while in custody.

35. Under the oath of office and the written rules and regulations promulgated by the NYPD, line officers and command personnel have an affirmative duty to intercede and prevent crimes and other misconduct committed by officers and to report such conduct whenever they become aware of it.

36. The individual Officer Defendants failed to intercede on behalf of Mr. Johnson, and failed to report the misconduct detailed above and below.

37. On May 27, 2003, PO Jose Frias swore to a false and fabricated account of the events surrounding Mr. Johnson's arrest in a supporting deposition.

38. The charges were knowingly and intentionally false and malicious.

39. The Bronx County District Attorney's office declined to prosecute Mr. Johnson, Mr. Johnson was released from Bronx County Criminal Court, and Mr. Johnson's case was dismissed and sealed.

40. At no time during the events described above did the defendant officers have probable cause for the arrest of Mr. Johnson, and there was no legal cause or excuse for his seizure. At no time did Mr. Johnson trespass on any property.

41. As a result of defendants' conduct described above, including assaulting, restraining, falsely arresting, falsely imprisoning, illegally searching, and maliciously prosecuting Mr. Johnson, Mr. Johnson suffered serious physical and emotional injury, pain and suffering, mental anguish, and humiliation and embarrassment.

42. The arrest, detention and prosecution of Mr. Johnson lacked probable cause, and were done maliciously, falsely, and in bad faith. The Officer Defendants acted in wanton and reckless disregard for the rights of Mr. Johnson.

43. Mr. Johnson has also suffered substantial emotional harm. He was terrorized by the attack, he still becomes fearful when he walks in the street, and he is still afraid of police officers.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983
(Against the Officer Defendants)

44. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

45. By arresting and imprisoning Mr. Johnson without probable cause, using excessive force, assaulting him, seizing him, searching him, imprisoning him, inhibiting his First Amendment activity, falsifying an account of the events surrounding the arrest and assault of Mr. Johnson upon which a criminal complaint was based, making false statements under oath, and failing to take steps to intercede and protect Mr. Johnson from such treatment, the Officer Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.

46. In addition, the Officer Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and by the First, Fourth and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

47. The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers. Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly,

and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

48. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

## SECOND CAUSE OF ACTION
New York State Constitution, Art. I, § 12
(Against All Defendants)

49. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

50. By arresting and imprisoning Mr. Johnson without probable cause, using excessive force, assaulting him, seizing him, searching him, imprisoning him, falsifying an account of the events surrounding the arrest and assault of Mr. Johnson, making false statements under oath, and failing to take steps to intercede and protect Mr. Johnson from such treatment, the Officer Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 12 of the New York Constitution.

51. In addition, the Officer Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by Article I, § 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

52. The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers. Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by Article I, § 12 of the New York Constitution.

53. Defendants, their officers, agents, servants, and employees were responsible for Plaintiff's deprivation of his state constitutional rights. The City, as the employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.

54. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

### **THIRD CAUSE OF ACTION**
Assault and Battery
(Against All Defendants)

55. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

56. The Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing acts which threatened such contact to Plaintiff, and that such acts caused apprehension of such contact in Plaintiff.

57. The Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff when they, in a hostile and/or offensive manner, struck Plaintiff without his consent, and with the intention of causing harmful and/or offensive bodily contact to Plaintiff.

58. The City, as the employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.

59. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

**FOURTH CAUSE OF ACTION**
False Arrest and False Imprisonment
(Against all Defendants)

60. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

61. By the actions described above, the Officer Defendants falsely arrested, falsely imprisoned and detained Mr. Johnson without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to Mr. Johnson and violated his statutory and common law rights as guaranteed to him by the laws and Constitution of the State of New York.

62. The City, as the employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

63. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

**FIFTH CAUSE OF ACTION**
Negligence
(Against All Defendants)

64. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

65. Defendants owed a duty of care to Plaintiff.

66. Defendants breached that duty of care by assaulting, seizing and detaining, and illegally searching Plaintiff with force.

67. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

68. All of the foregoing occurred without any fault or provocation by Plaintiff.

69. The City, as the employer of the Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

## SIXTH CAUSE OF ACTION
Negligent Hiring and Retention of Employment Services
(Against the City)

70. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

71. The City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff.  Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

72. Upon information and belief, the Officer Defendants were unfit and incompetent for their positions as police officers.

73. Upon information and belief, the City knew or should have known through the exercise of reasonable diligence that the Officer Defendants were dangerous.

74. Upon information and belief, the City's negligence in hiring and retaining the Officer Defendants proximately caused Plaintiff's injuries.

75. Upon information and belief, because of the City's negligent hiring and retention of the aforementioned Officer Defendants, Plaintiff incurred significant and lasting physical, mental, and professional injuries.

**SEVENTH CAUSE OF ACTION**
Liability of City of New York for Constitutional Violations
42 U.S.C. § 1983

76.    Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

77.    At all times material to this complaint, defendant City of New York, acting through the NYPD, had in effect de facto policies, practices, customs and usages that condoned and fostered the unconstitutional conduct of the defendant police officers, and were a direct and proximate cause of the damages and injuries complained of herein.

78.    These policies, practices, customs and usages include, inter alia: (a) the failure to properly screen, train, supervise, discipline, transfer, counsel and/or otherwise control police officers engaged in the excessive, unjustified and routine use of strip searches of persons arrested for misdemeanors or violations without any particularized reasonable suspicion of the possession of weapons or contraband; and (b) the failure to properly screen, train, supervise, discipline, transfer, counsel and/or otherwise control police officers engaged in the unlawful use of trespass "sweeps" involving indiscriminate arrests of persons in the area of the sweep without probable cause.

79.    The policy, practice, and custom of routine strip searches of misdemeanor and violation arrestees without sufficient cause is widespread, as evidenced by, inter alia,

   a.    Approximately 62,000 arrestees were strip searched in Queens and Manhattan and were certified as a class in the Tyson case. The City admitted that it had a policy of blanket strip searches and settled the case for a record $50 million.

      b.      The Police Department maintains a de facto blanket policy of strip searching, at the precinct, persons arrested for, <u>inter alia</u>, charges related to the quality-of-life offensive.

      c.      According to CCRB reports, the frequency of inappropriate strip searches is widespread, particularly among narcotics officers.

      d.      Upon information and belief, in almost all cases inappropriate strip searches occur after arrests for "petty crimes" such as excessive noise, disorderly conduct, or minor drug offenses.

      e.      The CCRB found that in all of the substantiated complaints involving strip-searches the officers or supervisors told investigators they believed "the searches had been appropriate, and in most cases routine."

      f.      Additionally, officers and supervisors informed the CCRB that their commands "routinely conducted the kind of searches that the board found violate procedures."

80.      The policy, practice, and custom of trespass "sweeps" consisting of arrests without probable cause for criminal trespass is widespread, as evidenced by, <u>inter alia</u>:

      a.      A central tool of the City's overzealous offensive against "quality-of-life" crimes, is these sweeps in the vicinity of public housing and buildings for which a "Clean Halls" affidavit has been filed. Although the police ostensibly target only persons who allegedly trespass inside these buildings, in practice the police indiscriminately arrest persons merely in proximity to the building.

      b.      As found in reports by the New York State Office of the Attorney General and the United States Civil Rights Commission, the aggressive stop-and-frisk policies that are part of the quality-of-life offensive, as evidenced by an analysis of UF-250 reports, result in an

entrenched pattern of racially disparate stops that cannot be explained by crime rates, population demographics, or victim descriptions. The stops and arrests resulting from the "sweeps" represent a significant portion of the total stops.

  c. Every day and every night, New York City arraignment courts are inundated with primarily African-American and Latino people charged with being at certain addresses targeted by the Police Department. From September 1997 to mid-December 2000, The Bronx Defenders, which staffs approximately 20% of arraignments Bronx County, represented 3,765 individuals charged with criminal trespass. This number represents fully 9% of all cases handled by The Bronx Defenders in this period. By extrapolation, the other defenders of indigent defendants in the Bronx have represented another 15,060 indigent defendants charged primarily with simple trespass. Virtually all of the boilerplate complaints are identical to the allegations that were made against the current Plaintiff.

  d. A common method of performing these sweeps involves the use of an observation post outside of the building in question. These investigations usually occur from the roof of nearby buildings in the dark. Because the officer monitoring passers-by is not inside the building, she necessarily must target a person as a suspect and a likely trespasser *before* he even enters the building, and without any particularized showing of suspicion. Moreover, the officer's placement outside of the building ensures that she cannot witness any of the necessary elements of a criminal trespass, which occur inside a building. Instead, the use of these observation posts results in the wholesale detention and arrest of anyone in the vicinity of the building, without probable cause.

  e. This practice of sweeping arrests without probable cause is condoned and accepted by the NYPD and the City.

   f. An experienced criminal court arraignment judge who has evaluated hundreds of trespass cases resulting from these sweeps has been quoted as saying that "God help somebody if they are visiting a grandmother or somebody and she is not home … you spend 24 hours in jail."

  81. Upon information and belief, in the vast majority of police abuse cases that result in verdicts or substantial settlements for the victims, the New York City Police Department imposes no discipline, either before or after the court resolution, almost never reopens an investigation previously conducted after such a resolution, and sometimes promotes the abusive officer to a position of greater authority despite the resolution.

  82. Defendant City had knowledge to a moral certainty of the pattern and practice of unconstitutional activities alleged above.

  83. Defendant City failed to effectively screen, hire, train, instruct, supervise, control and discipline, on a continuing basis, their police officers, including the defendant police officers herein, for illegally strip searching detainees, for conducting trespass "sweeps," for racial bias, for lack of truthfulness, for fabricating criminal charges and falsely swearing to criminal complaints against citizens for the purpose of shielding themselves against criminal and/or civil liability for violating those citizens' civil rights, and for their failure to protect citizens from unconstitutional conduct of other police officers.  As a result, plaintiff was exposed to their illegal acts, which led to serious injury.

  84. Defendant City's failure to screen, hire, train, instruct, supervise, control and discipline police officers was intentional, knowing, reckless, and constituted deliberate indifference to Plaintiff's federally protected rights.

85. The foregoing acts, omissions, systematic flaws, policies, and customs of defendant City caused the members of the NYPD to believe that their illegal and improper actions would not be properly investigated and corrected, with the foreseeable result that officers were likely to act improperly and illegally.

86. As a direct and proximate result of the aforesaid acts, omissions, systematic flaws, policies, practices, and customs of defendant City, the plaintiff has suffered mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated:     Bronx, New York
           May 25, 2006

           _____
           J. McGregor Smyth, Jr.  [JS-9995]
           THE BRONX DEFENDERS
           860 Courtlandt Avenue
           Bronx, New York  10451
           (718) 838-7878

           Attorneys for Plaintiff
           MICHAEL JOHNSON

16